United States District Court
for the
Southern District of Florida

| Animaccord Ltd., Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 20-25002-Civ-Scola |
| The Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A," Defendants. | ) ) ) ) | |

### <u>Sealed Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order</u>

This matter is before the Court upon the Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Plaintiff's Motion for TRO"). Plaintiff Animaccord Ltd. ("Plaintiff") moves, *ex parte*, for entry of a temporary restraining order against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" (collectively "Defendants"), and an order restraining the financial accounts used by the Defendants pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a). Upon careful consideration of the motion, the record, and the governing law the Court **grants** the Plaintiff's *Ex Parte* Application for Temporary Restraining Order.

1. **Factual Background**

The Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "Masha and The Bear Marks"):

| Trademark | Registration Number | Registration Date | First Use Date | Classes / Goods |
|---|---|---|---|---|
| Masha and The Bear | 4,790,909 | 09/11/2015 | | IC 009: Pre-recorded DVDs, namely, motion picture films featuring children's entertainment; |

| | | | | |
|---|---|---|---|---|
| | | | 4/15/2015 | IC 016: Paper products, namely, children's storybooks, notebooks, coloring books, greetings cards, stationery, stickers and pens; <br><br> IC 018: Backpacks; <br><br> IC 025: Apparel, namely, T-shirts and shoes; <br><br> IC 028: Toys, namely, dolls, stuffed toys, board games and card games; and <br><br> IC 030: Candy. |
| MASHA AND THE BEAR | 4,790,906 | 08/11/2015 | 08/04/2012 | IC 009: Pre-recorded DVDs, namely, motion picture films featuring children's entertainment; and <br><br> IC 041: Entertainment services, namely, production of motion picture films and motion picture film distribution services rendered through the media of cable television, broadcast |

| | | | | |
|---|---|---|---|---|
| | | | | television, and the Internet. |
| MASHA AND THE BEAR | 5,420,550 | 03/13/2018 | 06/16/2016 | *See* n. 1 below[1] |

---

[1] IC 003: Non-medicated soaps; almond soaps; antiperspirant soap; balms other than for medical or pharmaceutical purposes, namely, lip balms, body balms; bath salts, not for medical purposes; breath freshening sprays; breath freshening strips; cakes of toilet soap; cleaning preparations; cosmetic creams; cosmetic kits comprised on non-medicated cosmetics; cosmetics; cosmetic cotton wool; deodorant soap; deodorants for human beings or for animals; disinfectant soap; dry shampoos; dry cleaning preparations; hair lotions; hair sprays; laundry preparations, namely, laundry detergents, laundry softener, laundry bleach; lip glosses; lipstick; lipstick cases; lotions for cosmetic purposes; make-up; medicated soaps; mouth washes, not for medical purposes; mouthwashes; nail varnish; nail polish; nail art stickers; perfumes; shampoos; toilet water; toiletries, namely, non-medicated toiletry preparations; eau de cologne; perfumery; scented body splash water;

IC 012: Vehicles, namely, bicycles, tricycles, sleighs, kick sledges, baby carriages, prams, pushchairs, strollers; bicycles; tricycles; sleighs for transport purposes; kick sledges; baby carriages; prams; pushchairs; strollers; scooters, namely, motor scooters;

IC 014: Precious metals; jewelry; jewelry cases; imitation jewelry; clocks; wall clocks; electronic clocks; alarm clocks; clocks and watches; stands for clocks; horological instruments; chronometric instruments; precious stones; key rings of precious metal; watches;

IC 015: Accordions; cases for musical instruments; castanets; drums; drumsticks; electric musical instruments; flutes; guitars; harmonicas; horns; music synthesizers; music stands; musical boxes; pianos; saxophones; stands for musical instruments; tambourines; triangles; trombones; trumpets; violins; xylophones; musical instruments; basses;

IC 020: Furniture; furniture shelves; furniture of metal; figurines of wood, wax, plaster or plastic; fans for personal use, non-electric; air pillows, not for medical purposes; air mattresses, not for medical purposes; armchairs; baby changing mats; baskets, not of metal, namely, baker's bread baskets, Moses baskets; bead curtains for decoration; bed bases; bedding, except linen, namely, bed frames, bumper guards for cribs; beds; benches; bolsters; book rests; bottle caps, not of metal; cases of wood or plastic; bins of wood or plastic; boxes of wood or plastic; chests of drawers; chests for toys; clothes hooks, not of metal; coat hangers; clothes hangers; coat stands; containers, not of metal for storage and transport; costume stands; cupboards; curtain rings; curtain rails; curtain rollers; curtain pins; curtain rods; curtain hooks; curtain fittings; cushions; deck chairs; decorations of plastic for foodstuffs; desks; divans; door handles, not of metal; door bells, not of metal, non-electric; door knockers, not of metal; doors for furniture; dressing tables; easy chairs; embroidery frames; toilet mirrors being hand-held mirrors; head-rests; high chairs for babies; house numbers, not of metal, non-luminous; hydrostatic beds, not for medical purposes;

| | | | | |
|---|---|---|---|---|
| MASHA AND THE BEAR | 4,800,025 | 08/25/2015 | 04/15/2015 | IC 016: Paper products, namely, children's storybooks, notebooks, coloring books, greetings cards, stationery, stickers and pens;<br><br>IC 018: Backpacks; |

identification bracelets, not of metal; indoor window blinds; infant walkers; inflatable furniture; inflatable publicity objects; keyboards for hanging keys; ladders of wood or plastics; letter boxes not of metal or masonry; lockers; mats for infant playpens; mattresses; medicine cabinets; mirrors; decorative mobiles; office furniture; packaging containers of plastic; paper blinds; picture frames; pillows; placards of wood or plastics; plastic key cards, not encoded and not magnetic; playpens for babies; school furniture; chairs; shelves for storage; writing desks; sleeping bags for camping; sofas; stuffed animals; tables; tables of metal; tea trolleys; interior textile window blinds; tool and tool accessory trays, not of metal; umbrella stands; wall-mounted diaper changing platforms; table tops; slatted indoor blinds;

IC 021: Aerosol dispensers, not for medical purposes; baby bathtubs, portable; baskets for domestic use; bottles, sold empty; bowls; brushes, namely, toothbrushes, hair brushes; buckets; buckets made of woven fabrics; non-electric candelabra; candy boxes; ceramics for household purposes, namely, ceramic figurines, ceramic vases, ceramic vessels, bowls, plates and pots; coffeepots, non-electric; combs; electric combs; comb cases; confectioners' decorating bags; containers for household or kitchen use; cookery molds; cookie jars; cooking pots; cosmetic utensils, namely, cosmetic brushes; cups; cups of paper or plastic; dishes; disposable table plates; drinking bottles for sports; drinking glasses; dustbins; egg cups; floss for dental purposes; cups for eating fruits; frying pans; glass jars; glass bowls; gloves for household purposes; hot pots; ice buckets; ice cube molds; kitchen containers; lunch boxes; mugs; napkin holders; painted beverage glassware; paper plates; perfume vaporizers sold empty; perfume sprayers; porcelain ware, namely, mugs, statuettes; pots; pottery, namely, mugs, statuettes; salad bowls; soap holders; dishes for soap; soap boxes; soup bowls; straws for drinking; sugar bowls; tableware, other than knives, forks and spoons, namely, scoops for serving or portioning; tea services in the nature of tableware; teapots; toothbrushes, electric; toothbrushes; toothpicks; trays for domestic purposes; trays for domestic purposes, of paper; vases; vegetable dishes; and

IC 024: Textile material; bed covers; plastic table covers; bed linen; tablecloths, not of paper; handkerchiefs of textiles; travelling rugs; towels of textile; bed blankets; shower curtains of textile or plastic; curtains of textile or plastic; net curtains; table runners, not of paper; oilcloth for use as tablecloths.

| | | | | IC 025: Apparel, namely, T-shirts and shoes;<br><br>IC 028: Toys, namely dolls, stuffed toys, board games and card games;<br><br>IC 030: Candy. |

*See* Declaration of Iullia Belkova in Support of Plaintiff's Motion for TRO ("Belkova Decl.") at ¶ 4; *see also* United States Trademark Registrations for the Masha and The Bear Marks at issue attached as Composite Exhibit 1 to the Complaint. The Masha and The Bear Marks are used in connection with the design, marketing, and distribution of high-quality goods in the category identified above. *See id*.

The Plaintiff is also the owner of the following copyrights registered in the United States of America:

| Registration Number | Registration Date | Title of Work |
|---|---|---|
| VA 1-835-810 | Aug. 21, 2012 | Masha and the Bear Logo |
| PA 1-813-099 | July 12, 2012 | First day of school |
| PA 1-813-100 | July 12, 2012 | Laundry day |
| PA 1-813-101 | July 12, 2012 | Holiday on ice |
| PA 1-813-102 | July 12, 2012 | One, two, three! Light the Christmas tree! |
| PA 1-813-103 | July 12, 2012 | Recipe for disaster |
| TX 8-552-180 | Dec. 27, 2017 | Masha and the Bear: A Magical Holiday |
| TX 8-588-442 | Aug. 14, 2017 | Masha and the Bear: A Spooky Bedtime |
| TX 8-431-770 | June 23, 2017 | Masha and the Bear: Kidding Around! |
| TX 8-537-380 | Dec. 27, 2017 | Masha and the Bear: The Best Birthday |
| TX 8-444-776 | Aug. 7, 2017 | Masha and the Bear: The Girl Who Called Wolf |

*See* Belkova Decl. at ¶ 5; *see also* United States Copyright Registrations for works at issue attached as Composite Exhibit 2 to the Complaint. Additionally,

the Plaintiff is the owner of many unregistered copyrighted works, originally produced in Russia, a Berne Convention signatory. *See id.* at ¶ 5; *see also* Exhibit 3 to the Complaint. The copyrighted works identified in Composite Exhibit 2 and Exhibit 3 hereto are collectively referred to herein as the "Copyrighted Works."

The Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule "A" to the Complaint (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the Masha and The Bear Marks and Copyrighted Works. *See* Balkova Decl. at ¶¶ 15-18; Declaration of Richard Guerra in Support of Plaintiff's Motion for TRO ("Guerra Decl.") at ¶ 5.

Although each of the Defendants may not copy and infringe each of the Masha and The Bear Marks for each category of goods protected and/or Copyrighted Works, the Plaintiff has submitted sufficient evidence showing each of the Defendants has infringed at least one or more of the Masha and The Bear Marks and/or Copyrighted Works. *See* Guerra Decl. at ¶ 4, Schedule E. The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Masha and The Bear Marks or Copyrighted Works. *See* Balkova Decl. at ¶ 15.

The Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded and copyright protected products by the Defendants. *See* Balkova Decl. at ¶¶ 15-18. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeits of, at least, one of the Masha and The Bear Marks and Copyrighted Works at issue in this action, and requested each product to be shipped to an address in the Southern District of Florida. *See id.; see also* Guerra Decl. at ¶ 5. The Plaintiff conducted a review and visually inspected the Masha and The Bear branded items for which orders were initiated by Plaintiff's third party investigator via the Seller IDs and determined the products were nongenuine, unauthorized versions of the Plaintiff's products. *See id.*

### 2. Legal Standard

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs

the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

### 3. Analysis

The declarations the Plaintiff submitted in support of its *Ex Parte* Application for Temporary Restraining Order support the following conclusions of law:

A. The Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of the Masha and The Bear Marks, and that (2) the products Defendants are selling and promoting for sale are copies of the Plaintiff's products which bear copies of the Masha and The Bear Marks.

B. Because of the infringement of the Masha and The Bear Marks, the Plaintiff is likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. The following specific facts, as set forth in the Plaintiff's Complaint, Application for Temporary Restraining Order, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers before the Defendants can be heard in opposition unless the Plaintiff's request for *ex parte* relief is granted:

       1.     The Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of the Plaintiff's rights;

       2.     There is good cause to believe that more counterfeit and infringing products bearing the Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that the Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates; and

       3.     There is good cause to believe that if the Plaintiff proceeds on notice to the Defendants of this Application for Temporary Restraining Order, the Defendants can easily and quickly change the ownership or modify domain registration and e-commerce store account data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of Seller IDs thereby thwarting the Plaintiff's ability to obtain meaningful relief.

    C.     The balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to the Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

    D.     The public interest favors issuance of the temporary restraining order to protect the Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

    E.     Under 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing counterfeits and infringements of the Masha and The Bear Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

    F.     Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of the Plaintiff's Complaint, Application for Temporary Restraining Order, and supporting evidentiary submissions, the Court hereby **grants** the Plaintiff's *Ex Parte* Application for Temporary Restraining Order (**ECF No. 4**), under the terms set forth below:

(1) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are temporarily restrained as follows:

a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Masha and The Bear Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Masha and The Bear Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Masha and The Bear Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants; and

c. From using any reproduction, counterfeit, copy, or colorable imitation of the Masha and The Bear Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants.

(2) Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the use of the Masha and The Bear Marks, confusingly similar trademarks, or unauthorized copies of the Copyrighted Works on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

(3) Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

(4) Upon receipt of notice of this Order, the Defendants and any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, eBay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall within five (5) business days after receipt of notice of this Order,

    a. Restrain the transfer of all funds, as opposed to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

    b. Provide the Plaintiff expedited discovery of the following: (i) the identity of all financial accounts and/or sub-accounts associated with the Internet based e-commerce stores operating under the Seller IDs identified on Schedule "A" hereto, as well as any other accounts of the same customer(s); (ii) the identity and location of the Defendants identified in Schedule "A," including all known contact information including any and all known aliases and associated e-mail addresses; (iii) an accounting of the total funds restrained and identities of the financial account(s) and sub-account(s) for which the restrained funds are related.

(5) Any Defendant or Third Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

(6) The Clerk of the Court is directed to issue a single original summons in the name of "Honji Toy Store and all other Defendants identified in Schedule 'A' of the Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from payment processors, shall constitute notice reasonably calculated under all circumstances to apprise

Defendants of the pendency of the action and afford them the opportunity to present their objections.

(7)     This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the Masha and The Bear Marks and Copyrighted Works at issue in this action and/or unfairly competing with Plaintiff.

(8)     This Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated by the parties.

(9)     Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), and by **December 28, 2020**, the Plaintiff shall post a **bond** in the amount of **Ten Thousand Dollars and Zero Cents** (**$10,000.00**), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court. The Plaintiff shall file a notice with the Court confirming that the bond has been paid by that same date. In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(10)    After the Plaintiff's counsel has received confirmation from the financial institutions regarding the funds restrained as directed herein, and in no event later than **December 24, 2020**, the Plaintiff shall serve copies of the Complaint, Application for Temporary Restraining Order, and this Order, on each Defendant by e-mail via their corresponding e-mail address and/or online contact form or other means of electronic contact provided on the Internet based e-commerce stores operating under the respective Seller IDs or by providing a copy of this Order by email to the marketplace platforms for each of the Seller IDs so that the registrar, or marketplace platform, in turn, notifies each of the Defendants of the Order, or by other means reasonably calculated to give notice which is permitted by the Court. In addition, the Plaintiff shall post copies of the Complaint, Application for Temporary Restraining Order, and this Order, as well as all other documents filed in this action on the website located at https://www.dropbox.com/sh/0rdyn3lusosgf84/AACs2tumfk2J8yBPmcjFeju8a?dl=0 and shall provide the address to the website to the Defendants via e-mail/online contact form, and such notice so given shall be deemed good and sufficient service thereof. The Plaintiff shall continue to provide notice of these proceedings and copies of the documents on file in this matter to the Defendants by regularly updating the website located at

https://www.dropbox.com/sh/0rdyn3lusosgf84/AACs2tumfk2J8yBPmcjFeju8a?dl=0, or by other means reasonably calculated to give notice which is permitted by the Court. The Plaintiff must file a notice with the Court by **9:00 a.m. on December 27, 2020**, confirming that all the Defendants have been served with this order and with the complaint.

(11)   The Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d); Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a); and this Court's inherent authority.

(12)   The Court will hold a hearing in this matter on **January 4, 2021, at 8:30 a.m.**, at which time the Defendants and/or any other affected persons may challenge the appropriateness of or move to dissolve this order. The Court will also hear argument on the Plaintiff's requested preliminary injunction. The hearing will occur via videoconference. Details to join the videoconference will be provided on the docket in advance of the hearing. The Defendants must serve any response or opposition to the Plaintiff's motion on the Plaintiff's counsel by **December 29, 2020**. By that same date, the Defendants must also file their response or opposition with the Court, along with proof of service. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to Fed. R. Civ. P. 65, 28 U.S.C. § 1651(a), and this Court's inherent authority.

(13)   The Clerk is directed to **seal** this Order until **December 21, 2025**.

The above dates may be revised upon stipulation by the parties and approval of the Court. This order shall remain in effect until the Court rules on the Plaintiff's motion for preliminary injunction, or until such further date as set by the Court or stipulated to by the parties.

**Done and ordered** at Miami, Florida, on December 21, 2020.

Robert N. Scola, Jr.
United States District Judge