UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-cv-25002-SCOLA/GOODMAN

ANIMACCORD LTD.,
A Cyprus limited company,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A",

      Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON RENEWED
## MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

Plaintiff filed a Complaint against Defendants[1] for multiple intellectual property

claims. [ECF No. 1]. Defendants failed to answer the Complaint and Plaintiff requested

the clerk enter a default judgment. [ECF No. 37]. On February 23, 2021, the clerk entered

a default against the majority of the Schedule "A" Defendants.[2] [ECF No. 44]. After the

---

[1]     When the Undersigned uses the term "Defendants" in this case, it refers to the
Defendants referenced in Schedule "A" of Plaintiff's Renewed Motion for Entry of Final
Default Judgment. [ECF No. 60-1].

[2]     The clerk entered a separate default against Defendant Just for Happy Toys Store
on March 11, 2021. [ECF No. 54].

clerk's entry, Plaintiff filed a renewed motion for entry of final default judgment. [ECF No. 60]. United States District Judge Robert N. Scola referred this matter to the Undersigned to issue a Report and Recommendations. [ECF Nos. 71; 82]. For the following reasons, the Undersigned **respectfully recommends** the District Court grant Plaintiff's motion.

## I.      Introduction

Plaintiff filed suit against Defendants for trademark counterfeiting and infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), copyright infringement under the Copyright Act, 17 U.S.C §§ 106(1), (3), (4), 501, common law unfair competition, and common law trademark infringement.

Plaintiff's Complaint alleges that Defendants are advertising, promoting, distributing, and performing Plaintiff's copyrighted works via counterfeit and confusingly similar imitations of Plaintiff's registered trademarks within the Southern District of Florida. [ECF No. 1]. Defendants accomplish this using internet-based e-commerce stores operating under each of the Seller IDs identified on Schedule "A" ("Seller IDs"). [ECF No. 60-1].

Plaintiff asserts that Defendants' unlawful activities have caused, and will continue to cause, irreparable injury to Plaintiff because Defendants have: (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to

consumers; (2) defrauded consumers into thinking Defendants' illicit copies of Plaintiff's copyrighted works are authorized by Plaintiff; (3) deceived the public as to Plaintiff's sponsorship of and/or association with Defendants' counterfeit products and the websites or online storefronts through which such products are sold, offered for sale, marketed, advertised, and distributed; (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill and the commercial value of Plaintiff's trademarks; and (5) wrongfully damaged Plaintiff's ability to market its branded products, copyrighted works, and products, as well as educate consumers about its brand via the internet in a free and fair marketplace.

Plaintiff now seeks entry of a default final judgment against Defendants in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, common law trademark infringement, and infringement of copyright. Plaintiff further requests that the Court:

1.   Enjoin Defendants' unlawful use of Plaintiff's trademarks and copyrighting works;

2.   Award Plaintiff damages; and

3.   Instruct any third-party financial institution in possession of any funds restrained or held on behalf of Defendants to transfer these funds to Plaintiff in partial satisfaction of the awarded damages.

## II.     FACTUAL BACKGROUND[3]

Plaintiff is the registered owner of the following trademarks registered on the

Principal Register of the United States Patent and Trademark Office (the "Masha and the

Bear Marks"):

| Trademark | Registration Number | Registration Date | First Use Date | Classes/Goods |
|---|---|---|---|---|
|  | 4,790,909 | 08/11/2015 | 4/15/2015 | IC 009: Pre-recorded DVDs, namely, motion picture films featuring children's entertainment; <br><br> IC 016: Paper products, namely, children's storybooks, notebooks, coloring books, greetings cards, stationery, stickers and pens; <br><br> IC 018: Backpacks; <br><br> IC 025: Apparel, namely, T-shirts and shoes; <br><br> IC 028: Toys, namely, dolls, stuffed toys, board games and card games; and <br><br> IC 030: Candy. |
|  |  |  |  | IC 009: Pre-recorded DVDs, namely, motion picture films featuring children's entertainment; and |

---

[3]     The factual background comes from the Complaint, the multiple affidavits of Iuliia Belkova and Richard Guerra, and the Schedule "E" filings [ECF Nos. 1; 4-1; 4-2; 60-2; 61; 62; 63; 64; 65; 66; 67; 68].

| MASHA AND THE BEAR | 4,790,906 | 08/11/2015 | 08/04/2012 | IC 041: Entertainment services, namely, production of motion picture films and motion picture film distribution services rendered through the media of cable television, broadcast television, and the Internet. |
| MASHA AND THE | 5,420,550 | 03/13/2018 | 06/16/206 | See n.4 below[4] |

---

[4]    IC 003: Non-medicated soaps; almond soaps; antiperspirant soap; balms other than for medical or pharmaceutical purposes, namely, lip balms, body balms; bath salts, not for medical purposes; breath freshening sprays; breath freshening strips; cakes of toilet soap; cleaning preparations; cosmetic creams; cosmetic kits comprised on non-medicated cosmetics; cosmetics; cosmetic cotton wool; deodorant soap; deodorants for human beings or for animals; disinfectant soap; dry shampoos; dry cleaning preparations; hair lotions; hair sprays; laundry preparations, namely, laundry detergents, laundry softener, laundry bleach; lip glosses; lipstick; lipstick cases; lotions for cosmetic purposes; make-up; medicated soaps; mouth washes, not for medical purposes; mouthwashes; nail varnish; nail polish; nail art stickers; perfumes; shampoos; toilet water; toiletries, namely, non-medicated toiletry preparations; eau de cologne; perfumery; scented body splash water;

IC 012: Vehicles, namely, bicycles, tricycles, sleighs, kick sledges, baby carriages, prams, pushchairs, strollers; bicycles; tricycles; sleighs for transport purposes; kick sledges; baby carriages; prams; pushchairs; strollers; scooters, namely, motor scooters;

IC 014: Precious metals; jewelry; jewelry cases; imitation jewelry; clocks; wall clocks; electronic clocks; alarm clocks; clocks and watches; stands for clocks; horological instruments; chronometric instruments; precious stones; key rings of precious metal; watches;

IC 015: Accordions; cases for musical instruments; castanets; drums; drumsticks; electric musical instruments; flutes; guitars; harmonicas; horns; music synthesizers; music stands; musical boxes; pianos; saxophones; stands for musical instruments; tambourines; triangles; trombones; trumpets; violins; xylophones; musical instruments; basses;

IC 020: Furniture; furniture shelves; furniture of metal; figurines of wood, wax, plaster or plastic; fans for personal use, non-electric; air pillows, not for medical purposes; air mattresses, not for medical purposes; armchairs; baby changing mats; baskets, not of metal, namely, baker's bread baskets, Moses baskets; bead curtains for

decoration; bed bases; bedding, except linen, namely, bed frames, bumper guards for cribs; beds; benches; bolsters; book rests; bottle caps, not of metal; cases of wood or plastic; bins of wood or plastic; boxes of wood or plastic; chests of drawers; chests for toys; clothes hooks, not of metal; coat hangers; clothes hangers; coat stands; containers, not of metal for storage and transport; costume stands; cupboards; curtain rings; curtain rails; curtain rollers; curtain pins; curtain rods; curtain hooks; curtain fittings; cushions; deck chairs; decorations of plastic for foodstuffs; desks; divans; door handles, not of metal; door bells, not of metal, non-electric; door knockers, not of metal; doors for furniture; dressing tables; easy chairs; embroidery frames; toilet mirrors being hand-held mirrors; head-rests; high chairs for babies; house numbers, not of metal, non-luminous; hydrostatic beds, not for medical purposes; identification bracelets, not of metal; indoor window blinds; infant walkers; inflatable furniture; inflatable publicity objects; keyboards for hanging keys; ladders of wood or plastics; letter boxes not of metal or masonry; lockers; mats for infant playpens; mattresses; medicine cabinets; mirrors; decorative mobiles; office furniture; packaging containers of plastic; paper blinds; picture frames; pillows; placards of wood or plastics; plastic key cards, not encoded and not magnetic; playpens for babies; school furniture; chairs; shelves for storage; writing desks; sleeping bags for camping; sofas; stuffed animals; tables; tables of metal; tea trolleys; interior textile window blinds; tool and tool accessory trays, not of metal; umbrella stands; wall-mounted diaper changing platforms; table tops; slatted indoor blinds;

IC 021: Aerosol dispensers, not for medical purposes; baby bathtubs, portable; baskets for domestic use; bottles, sold empty; bowls; brushes, namely, toothbrushes, hair brushes; buckets; buckets made of woven fabrics; non-electric candelabra; candy boxes; ceramics for household purposes, namely, ceramic figurines, ceramic vases, ceramic vessels, bowls, plates and pots; coffeepots, non-electric; combs; electric combs; comb cases; confectioners' decorating bags; containers for household or kitchen use; cookery molds; cookie jars; cooking pots; cosmetic utensils, namely, cosmetic brushes; cups; cups of paper or plastic; dishes; disposable table plates; drinking bottles for sports; drinking glasses; dustbins; egg cups; floss for dental purposes; cups for eating fruits; frying pans; glass jars; glass bowls; gloves for household purposes; hot pots; ice buckets; ice cube molds; kitchen containers; lunch boxes; mugs; napkin holders; painted beverage glassware; paper plates; perfume vaporizers sold empty; perfume sprayers; porcelain ware, namely, mugs, statuettes; pots; pottery, namely, mugs, statuettes; salad bowls; soap holders; dishes for soap; soap boxes; soup bowls; straws for drinking; sugar bowls; tableware, other than knives, forks and spoons, namely, scoops for serving or portioning; tea services in the nature of tableware; teapots; toothbrushes, electric; toothbrushes; toothpicks; trays for domestic purposes; trays for domestic purposes, of paper; vases; vegetable dishes; and

| | | | | |
|---|---|---|---|---|
| BEAR | | | | |
| MASHA AND THE BEAR | 4,800,025 | 08/25/2015 | 04/15/2015 | IC 016: Paper products, namely, children's storybooks, notebooks, coloring books, greetings cards, stationery, stickers and pens;<br><br>IC 018: Backpacks;<br><br>IC 025: Apparel, namely, T-shirts and shoes;<br><br>IC 028: Toys, namely dolls, stuffed toys, board games and card games;<br><br>IC 030: Candy |

[ECF No. 1-1] (containing Certificates of Registrations for the Masha and the Bear Marks at issue). The Masha and the Bear Marks are used in connection with the design, marketing, and distribution of high-quality goods in each of the categories identified above, and more. [ECF No. 4-1]. Plaintiff's rights to the Masha and Bear Marks are exclusive. *Id.*

Plaintiff is also the owner of the following copyrights registered in the United States of America:

| Registration Number | Registration Date | Title of Work |
|---|---|---|
| VA 1-835-810 | Aug. 21, 2012 | Masha and the Bear Logo |

---

IC 024: Textile material; bed covers; plastic table covers; bed linen; tablecloths, not of paper; handkerchiefs of textiles; travelling rugs; towels of textile; bed blankets; shower curtains of textile or plastic; curtains of textile or plastic; net curtains; table runners, not of paper; oilcloth for use as tablecloths.

| PA 1-813-099 | July 12, 2012 | First day of school |
|---|---|---|
| PA 1-813-100 | July 12, 2012 | Laundry day |
| PA 1-813-101 | July 12, 2012 | Holiday on ice |
| PA 1-813-102 | July 12, 2012 | One, two, three! Light the Christmas tree! |
| PA 1-813-103 | July 12, 2012 | Recipe for disaster |
| TX 8-552-180 | Dec. 27, 2017 | Masha and the Bear: A Magical Holiday |
| TX 8-588-442 | Aug. 14, 2017 | Masha and the Bear: A Spooky Bedtime |
| TX 8-431-770 | June 23, 2017 | Masha and the Bear: Kidding Around! |
| TX 8-537-380 | Dec. 27, 2017 | Masha and the Bear: The Best Birthday |
| TX-8-444-776 | Aug. 7, 2017 | Masha and the Bear: The Girl Who Called Wolf |

*Id.* at p. 5. Additionally, Plaintiff is the owner of many unregistered copyrights, including, but not limited to, those specifically identified in Paragraph 34 and Exhibit 3 of the Complaint. [ECF Nos. 1; 1-3]; *see also* [ECF No. 4-1, p.5]. Collectively, the Undersigned will refer to these register and unregistered copyrighted works as the "Copyrighted Works." Plaintiff has exclusive rights to the Copyrighted Works. [ECF Nos. 1; 4-1].

Defendants, through the various internet-based e-commerce stores operating under the Seller IDs, have advertised, promoted, offered for distribution, distributed and/or publicly performed the Copyrighted Works, using counterfeits, infringements, reproductions, and/or colorable imitations of the Masha and the Bear Marks and Copyrighted Works. [ECF Nos. 4-1, pp. 15-18; 4-2, p. 4].

Although each individual Defendant may not copy and infringe *each* of Plaintiff's

trademarks and copyrights for *every* category of service protected, Plaintiff has included evidence showing each Defendant has infringed on at least one of the Masha and the Bear Marks and the Copyrighted Works. [ECF Nos. 4-1, pp. 15-18; 61; 62; 63; 64; 65; 66; 67; 68].[5] Plaintiff has not, at any point, authorized or licensed Defendants to use, reproduce, distribute, or make counterfeits, reproductions, or colorable imitations of the Masha and the Bear Marks and the Copyrighted Works. [ECF No. 4-1, pp. 15-18].

As part of Plaintiff's ongoing investigation into the sale of counterfeit and infringing products, it hired a third-party investigator to access Defendants' internet-based e-commerce stores operating under the Seller IDs. [ECF No. 4-2; 4-2]. The third-party investigator placed orders with each Seller ID for the purchase of various products, all bearing, or suspected of bearing, counterfeits of at least one of the Masha and the Bear Marks or Copyrighted Works. *Id.* Each order requested that the purchased product be shipped to an address in the Southern District of Florida. *Id.* Because of this, Plaintiff claims that Defendants' products are being promoted, advertised, offered for sale, and sold by Defendants within the Southern District of Florida and throughout the United States. *Id.*

A representative for Plaintiff personally analyzed the Masha and the Bear branded

---

[5]     Plaintiff collectively filed, as multiple filings, the Schedule "E" documents. [ECF Nos. 61; 62; 63; 64; 65; 66; 67; 68]. Plaintiff needed multiple filings due to the size and the limits of the CM/ECF system in accepting such large files. From here on, the Undersigned will cite to these documents as "Schedule 'E'."

items purchased by the investigator and reviewed the e-commerce stores operating under each of the Seller Ids, detailed webpage captures, and other images of the items bearing the Masha and the Bear Marks and Copyrighted Works. *Id.* After this review, the representative determined the advertised and purchased products were non-genuine, counterfeit, and unauthorized Masha and the Bear products. *Id.*

## III.   LEGAL STANDARD

Pursuant to the provisions of Federal Rule of Civil Procedure 55, when a party against whom affirmative relief is sought has failed to plead or otherwise defend, as provided by the Rules of Civil Procedure -- such as the Defendants in this action -- a default shall be entered against that party. Because of the default, Defendants have admitted the well-pleaded allegations of the Complaint. *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277-78 (11th Cir. 2005).

Thus, the Court must first determine whether there is sufficient basis in the Complaint for judgment to be entered. *DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (internal citation omitted) ("A defendant's default does not in itself warrant the court entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered. . . ."); *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (stating "liability is well-pled in the complaint, and is therefore established by the entry of default.").

If the facts in the Complaint are sufficient to establish liability, then the Court must

determine the appropriate amount of damages. *See Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). Where all the essential evidence is in the record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearing in a permissive tone . . . . We have held that no such hearing is required where all essential evidence is already of record.").

## IV. ANALYSIS

### A. Claims

### 1. Trademark Counterfeiting and Infringement Under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides liability for trademark infringement if, without the consent of the registrant, an individual uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

To prevail on a trademark infringement claim under Section 32 of the Lanham Act, a plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's trademark, such that consumers were likely to confuse the two. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star*

*Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2. False Designation of Origin Under Section 43(A) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II)

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, a plaintiff must prove that the defendant used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, that is likely to deceive as to the affiliation, connection, or association of the defendant with the plaintiff, or as to the origin, sponsorship, or approval, of the defendant's goods by the plaintiff. 15 U.S.C. § 1125(a)(1).

The test for liability for false designation of origin under Section 1125(a) is the same as for a trademark counterfeiting and infringement claim— i.e., whether the public is likely to be deceived or confused by the similarity of the marks at issue. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

### 3. Common Law Unfair Competition and Trademark Infringement (Counts III and IV)

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under Florida common law. *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83–8381–Civ–Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition

under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.,* 711 F.2d 966, 972 (11th Cir. 1983).”); *see also Boston Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004, 1010 (5th Cir. 1975) (“As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.”).

### 4.  Infringement of Copyright (Count V)

To prevail on a claim of direct infringement of copyright under the Copyright Act, 17 U.S.C. §§ 106(1), (3)-(4), Plaintiff must “satisfy two requirements to present a prima facie case of direct infringement: (1) [it] must show ownership of the allegedly infringed material and (2) [it] must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.” *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 (9th Cir. 2001); *see also Disney Enters v. Hotfile Corp.,* 2013 WL 6336286, at *30 (S.D. Fla. 2013) (“Thus, to establish this derivative liability, a plaintiff must first make a prima facie case of direct infringement by a third party, which is done by proving ownership of a particular work and evidence of unauthorized copying.”).

### a.  Liability

The well-plead factual allegations of the Complaint properly allege the elements for each of the claims described above. [ECF No. 1]. Moreover, sworn declarations and documentary evidence substantiate the factual allegations in the Complaint, which, in sum, establish Defendants' liability under each of the claims asserted in the Complaint.

13

[ECF Nos. 1; 1-1; 1-3; 4-1; 4-2; Schedule "E"].

Defendants have failed to plead or otherwise defend against Plaintiff's claims.

Because of this, the Undersigned **respectfully recommends** the District Court

enter a default judgment under Federal Rule of Civil Procedure 55.

### b. Injunctive Relief

The Lanham Act authorizes the court to issue an injunction "according to the

principles of equity and upon such terms as the court may deem reasonable," to prevent

violations of trademark law. 15 U.S.C. § 1116(a). In fact, "[i]njunctive relief is the remedy

of choice for trademark and unfair competition cases, since there is no adequate remedy

at law for the injury caused by a defendant's continuing infringement." *Burger King Corp.*

*v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v.*

*Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Injunctive relief is available even in cases

involving default judgments. *See PetMed Express, Inc.*, 336 F. Supp. 2d 1213, 1222-23 (S.D.

Fla. 2004).

Defendants' failure to respond or appear in the instant case serves as evidence that

a permanent injunction is the only means to protect Plaintiff's rights. *See Jackson v. Sturkie*,

255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efedant's lack of participation in this

litigation has given the court no assurance that defendant's infringing activity will cease.

Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1)

it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006). Here, Plaintiff has carried its burden as to each of the four factors.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.").

The Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined. [ECF No. 1]. Further, the Complaint alleges that the unauthorized Masha and The Bear products sold, offered for sale, marketed, advertised, and distributed by Defendants are nearly identical to Plaintiff's genuine Masha and The Bear products and that consumers viewing Defendants' counterfeit products would actually confuse them for Plaintiff's genuine products. *Id.* "The effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff." [ECF No. 1, p. 13].

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of counterfeit Masha and The Bear products in the marketplace. An award of monetary damages, alone, will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if the Court enjoins them from infringing on Plaintiff's trademarks and copyrights, which is an illegal act.

Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' counterfeit products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.").

The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has

power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defendants have created an internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Because Plaintiff has established all four factors weigh in its favor, the Undersigned **respectfully recommends** the District Court enter a permanent injunction against Defendants.

### c. Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of products, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, then it may impose damages above the maximum limit, up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate even if a plaintiff cannot prove actual damages caused by a defendant's

infringement. *Under Armour, Inc. v. 51nfljersey.com*, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits).

Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See, e.g.*, S. REP. NO. 104- 177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").

This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007). Although the Court is permitted to conduct a hearing on a default judgment in regards to damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks

of evidentiary hearings in a permissive tone . . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction, and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Complaint, *which are taken as true*, establish Defendants intentionally copied the Masha and the Bear Marks to derive the benefit of Plaintiff's world-famous reputation. As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of service as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant sold, promoted, distributed, advertised, and/or offered for sale products bearing marks which were in fact counterfeits of at least one of the Masha and the Bear Marks. [ECF No. 1, Schedule "E"]. Based on the above considerations, Plaintiff suggests the Court award statutory damages of $100,000.00 against each Defendant. This award is sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defendants, which are all stated goals of 15 U.S.C. § 1117(c).

The Undersigned believes that this award of statutory damages is just and falls within the permissible statutory range under 15 U.S.C. § 1117(c), and **respectfully recommends** the District Court impose Plaintiff's requested statutory damages.

### d.  Damages for False Designation of Origin

Plaintiff's Complaint, in Count II, also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a). Count II also encompasses the allowed scope of monetary damages in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II is limited to the amount awarded under Count I and entry of the requested equitable relief.

### e.  Damages for Common Law Unfair Competition and Trademark Infringement

Plaintiff's Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV). Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.[6]

### V.  CONCLUSION

The Undersigned **respectfully recommends** the District Court grant Plaintiff's renewed motion for entry of final default judgement against the Schedule "A" Defendants pursuant to Federal Rule of Civil Procedure 55.

The Undersigned also **respectfully recommends** the District Court permanently restrain and enjoin Defendants from: (1) manufacturing or causing to be manufactured,

---

[6]     Plaintiff indicated it is electing not to pursue statutory damages or actual damages under the Copyright Act and is only seeking equitable relief in the form of a permanent injunction with respect to its copyright infringement claim. [ECF No. 60, p. 19 n.7].

importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods bearing Plaintiff's Masha and the Bear Marks or Copyrighted Works; (2) using the Masha and the Bear Marks or Copyrighted Works in connection with the sale of any unauthorized goods; (3) using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; (4) falsely representing themselves as being connected with Plaintiff; (5) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are, in any way, endorsed by, approved by, and or associated with Plaintiff; (6) using any reproduction, counterfeit, copy, or colorable imitation of the Masha and the Bear Marks or Copyrighted Works in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; (7) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendants as being those of Plaintiff or in any way endorsed by Plaintiff; (8) otherwise unfairly competing with Plaintiff; (9) using the Masha and the Bear Marks, Copyrighted Works, or any confusingly similar trademarks, within domain name extensions or on e-commerce marketplaces, social media, or image hosting websites, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other

websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to internet-based e-commerce stores, websites, businesses registered by, owned, or operated by Defendants, including the internet-based e-commerce stores, photo albums, and commercial internet websites operating under all of the Seller IDs; and (10) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions previously set forth.

The Undersigned further **respectfully recommends** that the District Court order that Plaintiff is entitled to the following equitable relief:

a. To give practical effect to the Permanent Injunction, order the Subject Domain Names identified on Schedule "A" be IMMEDIATELY TRANSFERRED by Defendants, their assignees and/or successors in interest or title, and the Registrar to Plaintiff's control. To the extent the current Registrar does not facilitate the transfer of the Subject Domain Name to Plaintiff's control within five (5) days of receipt of this Judgment, upon Plaintiff's request, the top-level domain (TLD) Registry for the Subject Domain Name, or its administrators, including backend registry operators or administrators, shall, within thirty (30) days, (i) change the Registrar of Record for the Subject Domain Name to a Registrar of Plaintiff's choosing, and that the Registrar shall transfer the Subject Domain Name to

Plaintiff, or (ii) place the Subject Domain Name on Registry Hold status for the life of the current registration, thus removing them from the TLD zone files maintained by the Registry which link the Subject Domain Name to the IP addresses where the associated website is hosted;

b. Defendants, their agent(s) or assign(s), shall assign all rights, title, and interest, to its Subject Domain Name to Plaintiff and, if within five (5) days of receipt of this Order a Defendant fails to make such an assignment, then the Court shall order the act to be done by another person appointed by the Court at the Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a);

c. Defendants, their agent(s) or assign(s), shall instruct all search engines to permanently delist or deindex the Subject Domain Name and, if within five (5) days of receipt of this Order a Defendant fails to make such a written instruction, then the Court shall order the act to be done by another person appointed by the Court at the Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a);

d. Plaintiff may serve this injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are used by the Defendants in connection with the Defendants' promotion, offering for sale, and/or sale of goods using counterfeits, and/or infringements of the Masha

and the Bear Marks or Copyrighted Works;

e. Upon Plaintiff's request, any messaging service and internet marketplace, social media, and image hosting website operators and/or administrators for the Seller IDs, including but not limited to Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform, DHgate.com, Instagram.com, Joom.com, Wanelo.com, WhatsApp, Wish.com, and Yupoo.com, shall permanently remove from the multiple platforms, which include, inter alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Masha and the Bear Marks via the e-commerce stores and internet-based photo albums operating under the Seller IDs on Schedule "A," and any other listings and images of goods bearing and/or using counterfeits and/or infringements of the Masha and the Bear Marks associated with and/or linked to the same sellers or any other e-commerce store names, photo albums, seller identification names, user names, private messaging accounts being used and/or controlled by the Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the Masha and the Bear Marks and Copyrighted Works;

f. Upon Plaintiff's request, any internet marketplace, social media, and image hosting website operators and/or administrators who are in possession, custody,

or control of the Defendants' goods bearing and/or using one or more of the Masha and the Bear Marks, including but not limited to Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform, DHgate.com, Instagram.com, Joom.com, Wanelo.com, WhatsApp, Wish.com, and Yupoo.com, shall permanently cease fulfillment of, sequester, and surrender the goods to Plaintiff; and

g. Upon Plaintiff's request, Defendants shall request, in writing, permanent termination of any Seller IDs, messaging services, user names, and social media accounts they own, operate, or control on any messaging service and social media platform, specifically including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform, DHgate.com, Instagram.com, Joom.com, Wanelo.com, WhatsApp, Wish.com, and Yupoo.com.

The Undersigned further **respectfully recommends** the District Court grant Plaintiff's request for statutory damages in the amount of $100,000 against each Defendant, for which let execution issue forthwith.

The Undersigned also **respectfully recommends** the District Court order the following:

a. All funds currently restrained or held on account for all Defendants by all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to,

Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd. and Alipay.com Co., Ltd. (collectively, "Alipay"), Worldpay US, Inc. ("Worldpay"), Dunhuang Group, which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc., SIA Joom, which operates the Joom.com platform ("Joom") PayPal, Inc. ("PayPal") Wanelo.com ("Wanelo") Stripe, Inc. ("Stripe"), and ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), and their related companies and affiliates, are to be immediately (within 5 business days) transferred by the previously referred to financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms and by Defendant to Plaintiff and/or Plaintiff's counsel in partial satisfaction of the monetary judgment entered herein against each Defendant. All financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to AliExpress, Ant Financial Services, Alipay, Worldpay, Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc., Joom, PayPal, Wanelo, Stripe, and ContextLogic, and their related companies and affiliates, shall provide to Plaintiff at the time the funds are released, a breakdown reflecting the (i) total

funds restrained in this matter per Defendant; (ii) the total chargebacks, refunds, and/or transaction reversals deducted from each Defendant's funds restrained prior to release; and (iii) the total funds released per Defendant to Plaintiff.

Additionally, the Undersigned **respectfully recommends** the District Court order that interest, beginning from the date this action was filed, shall accrue at the legal rate. *See* 28 U.S.C. § 1961.

The Undersigned also **respectfully recommends** the District Court order the $10,000.00 bond posted by Plaintiff be released by the Clerk.

## VI.    OBJECTIONS

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Robert N. Scola Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and Recommendations and shall bar the parties from attacking on appeal any factual or legal conclusions contained in this Report and Recommendations and to which they did not object, except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); CTA11 Rule 3-1.

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on July 7, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

Robert N. Scola

All counsel of record